# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **CHARLES A. DICKERSON, #224220,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:15-cv-0238** |
| | ) | |
| **TENNESSEE DEPARTMENT OF CORRECTION,** | ) | **Chief Judge Sharp** |
| **DERRICK SCHOFIELD, MEGAN E. MILLER,** | ) | |
| **JENNIFER BOYER, ROBERT MOSLEY, and** | ) | |
| **ROLAND COLSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff Charles Dickerson is a state prisoner incarcerated at the Northeast Correctional Complex ("NECX") in Mountain City, Tennessee. He has filed a complaint in this Court under 42 U.S.C. § 1983 against the Tennessee Department of Correction ("TDOC"); TDOC Commissioner Derrick Schofield; Roland Colson, former warden of Riverbend Maximum Security Institution ("RMSI"); Sgt. Robert Mosely, RMSI Disciplinary Board Chairman; and Megan Miller and Jennifer Boyer, members of the RMSI Disciplinary Board. The Court has granted the plaintiff leave to proceed *in forma pauperis*, and the complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA").

## I.     Standard of Review

Under the PLRA, the Court must conduct an initial review of any civil complaint brought by a prisoner if it is filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), seeks relief from government entities or officials, 28 U.S.C. § 1915A, or challenges the prisoner's conditions of confinement, 42 U.S.C. § 1997e(c). Upon conducting this review, the Court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive

scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## II.     Factual Allegations

The plaintiff in this case alleges that he was placed in administrative segregation ("AS") on July 20, 2012 for an apparently indefinite period of time. The plaintiff does not state when he was removed from AS, but the record reflects that he was transferred to NECX at some point. Presumably he was taken off AS prior to or contemporaneously with the transfer to NECX.

The plaintiff states that his placement in AS was arbitrary and capricious and not in accordance with RMSI's and TDOC's established policies. Specifically, a hearing was conducted without warning to the plaintiff, at which he was not apprised of the charges or evidence against him, no witnesses or evidence was introduced against him, and the petitioner was not permitted to present witnesses or evidence in his defense. The plaintiff alleges that he was exhausted his administrative and state-law remedies by filing grievances and by pursuing a Petition for Common-Law Writ of Certiorari in the state court, the outcome of which is not in the court's present record.

More specifically, the plaintiff alleges that he was transferred to RMSI from a different facility on July 6, 2012. On July 19, 2012, he was pulled out of his cell and taken to an AS placement hearing conducted by Sgt. Robert Mosley, with Megan Miller and Jennifer Boyer in attendance. The plaintiff did not receive any prior notice that he was being considered for AS placement. In addition, the defendants did not provide to the plaintiff any notice of the reasons why he had been recommended for AS either

verbally or in writing during the AS placement hearing, except, according to the plaintiff, the defendants told him that they were directed by then-Warden Roland Colson to "place [plaintiff] in administrative segregation by any means necessary." (ECF No. 1, at 59.) The AS placement report, which the plaintiff apparently received later, states only that the triggering incident was "[c]onfidential informa[tion] received from internal affairs." (ECF No. 1, at 59–60; see also Compl. Exs. G, I, ECF No. 1, at 12 (warden's response to grievance, stating "You were not placed on AS for a disciplinary infraction."), 39 (placement report, stating that Internal Affairs had "received Confidential Information . . . which constituted grounds for Administrative Segregation per the recommendation of Warden Colson").) As of November 8, 2012, at least, the AS placement was continued. (*See* Compl. Ex. I, ECF No. 1, at 40 (warden's statement dated Nov. 8, 2012: "Met with I.A., confidential information was relayed to me supporting the continued placement on A.S. at this time.").) Further grievance documents submitted by the plaintiff indicate that he was still in AS at least as of February 24, 2013. (*See* ECF No. 1, at 52–55.) He does not indicate when he was released back in the prison general population.

The plaintiff asserts that the defendants' actions violated prison regulations and his constitutional due-process rights. He seeks compensatory damages from each defendant in the amount of $8,000, and punitive damages in the amount of $7,000 from each defendant.

**III.    Discussion**

The plaintiff seeks to bring suit under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

As an initial matter, the Court finds TDOC is not a "person" subject to suit under 42 U.S.C. § 1983. The Eleventh Amendment to the United States Constitution bars § 1983 claims against a state or any arm of a state government. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). TDOC is

considered part of the state of Tennessee for purposes of federal civil-rights claims and is therefore not a suable entity under § 1983, either for damages or injunctive relief. *See Hix v. Tenn. Dep't of Corrs.*, 196 F. App'x 350, 355 (6th Cir. 2006) ("TDOC is not a 'person' within the meaning of § 1983, and is therefore not a proper defendant." (citing *Will*, 491 U.S. at 64)). Because TDOC is immune from suit under § 1983, the claims against this defendant will be dismissed with prejudice.

The plaintiff's claims against Derrick Schofield are likewise subject to dismissal. Insofar as Commissioner Schofield is sued in his official capacity, the claims against him are equivalent to claims against the state itself, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), and, like the claims against TDOC, are subject to dismissal on the grounds of immunity. *Will*, 491 U.S. at 71. Insofar as this defendant is sued in his individual capacity, the claims fail because the plaintiff has not alleged facts showing that Commissioner Schofield was personally involved in any of the events that gave rise to the plaintiff's claims. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976) (to establish the liability of any individual defendant, the plaintiff must show that that particular defendant was personally involved in the activities giving rise to the plaintiff's claims); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.").

Regarding the claims against the remaining defendants, the Court notes first that § 1983 claims in Tennessee are governed by a one-year statute of limitations is tolled during the time that a prisoner-plaintiff completes the process of exhausting his available state remedies. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). Although it appears likely that the plaintiff's claims are barred by the statute of limitations, the date on which the exhaustion process was completed is not entirely clear from the allegations in the plaintiff's complaint. The Court therefore declines to dismiss the complaint on the basis of the statute of limitations at this stage.

The question of whether the factual allegations state a claim against the remaining defendants for violation of the plaintiff's constitutional rights presents a close call. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that transfer from medium-

security to maximum-security prison did not infringe or implicate a "liberty" interest protected by the Due Process Clause). In *Sandin v. Hewitt*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. Under *Sandin*, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* The *Sandin* Court concluded that a mere thirty-day placement in administrative segregation did not implicate a liberty interest because the conditions of segregation at issue in that case did not impose an atypical and significant hardship. *Id.*; *but see Wilkinson v. Austin*, 545 U.S. 209, 223–34 (2005) (placement in state "supermax" facility sufficiently atypical to implicate due process under *Sandin*).

Based on *Sandin*, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See, e.g.*, *Jones v. Baker*, 155 F.3d 810, 812–13 (6th Cir. 1998) (two years of segregation while inmate was investigated for murder of prison guard in riot did not pose atypical and significant hardship); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995) (due process right not implicated in case of inmate serving life sentence who was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (no due process violation where inmate was subjected to one year of segregation after being found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding).

In *Harden-Bey v. Rutter*, 524 F.3d 789, 792–93 (6th Cir. 2008), however, the Sixth Circuit held that a plaintiff's "allegedly indefinite confinement in administrative segregation, three years and running as of the time of the complaint," where "prison officials refuse[d] to give him a hearing to explain his continued detention," stated a claim based on the "atypical and significant" restrictions imposed by such detention. The court noted: "While the prison may have ample reasons for segregating Harden-Bey from the general prison population and may indeed have given him all of the procedural protections to which he is entitled before and after this placement, we have no way of knowing whether that is so based solely on his complaint." *Id.* at 793.

Similarly in this case, the plaintiff's detention was initially indefinite and it is unclear from the

complaint exactly how long it lasted, and the plaintiff alleges that he was not given an explanation for his initial or his continued detention. Under the circumstances presented here, solely for the purposes of initial review, the Court finds that the plaintiff's claim of a lengthy, indeterminate placement in AS, not as a punitive measure but as a result of an inchoate threat, where the plaintiff did not receive notice of the charges against him and was not permitted to defend himself, raises a question of whether his due process rights have been violated. The Court will at this stage permit this due process claim to proceed against defendants Miller, Boyer, Mosley, and Colson.

IV.     **CONCLUSION**

For the reasons set forth herein, the claims against defendants TDOC and Derrick Schofield will be dismissed, but the remaining claims will for now be permitted to proceed. An appropriate order is filed herewith.

KEVIN H. SHARP
Chief Judge
United States District Court